# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| BARBARA VAUGHN,  )<br>AMY L. FORD,  )<br>LISA EDWARDS,  )<br>  )<br>  Plaintiffs,  )<br>  )<br>v.  )<br>  )<br>TRANSCEND SERVICES, INC.  )<br>  )<br>Serve at:  )<br>  )<br>Registered Agent  )<br>The Corporation Trust Company  )<br>1201 Peachtree Street, NE  )<br>Atlanta, GA 30361  )<br>  )<br>  Defendant.  )  | **Civil Action File No.:**<br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

COME NOW Plaintiffs Barbara Vaughn, Amy L. Ford, and Lisa Edwards (hereinafter collectively referred to as "Plaintiffs") by and through their undersigned counsel, and for their Complaint against Defendant Transcend Services, Inc. (hereinafter "Defendant" or "Transcend"), state as follows:

1. Plaintiff Barbara Vaughn is a citizen of the United States and resides in Riverdale, Georgia. She was a Medical Language Specialist at Transcend from at least February 2010 to December 2012.

2.      Plaintiff Amy L. Ford is a citizen of the United States and resides in Woodstock, Georgia.  She was a Medical Language Specialist at Transcend from June 2010 to April 2012.

3.      Plaintiff Lisa Edwards is a citizen of the United States and resides in Rome, Georgia.  She was a Medical Language Specialist at Transcend from November 2011 to December 2012.

4.      At all times relevant herein, Defendant Transcend Services, Inc. was a Delaware corporation with its principal place of business in Atlanta, Georgia. Transcend employed approximately 2,000 Medical Language Specialists around the United States to work from their homes transcribing and editing medical records for the approximately 320 hospitals and health systems that contracted with Transcend. Transcend is currently a wholly owned subsidiary of Nuance Communications, Inc.

5.      Plaintiffs bring this lawsuit pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* as a result of Defendant's failure to pay them minimum wage pursuant to 29 U.S.C. §§ 206-207.

6.      The FLSA, 29 U.S.C. § 201 *et seq.*, authorizes court actions by private parties to recover damages for violation of the wage and hour provisions contained within the FLSA.  Jurisdiction over the FLSA claims of Plaintiffs is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

7. At all times material to this action, Transcend is and/or has been the "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d). At all times material to this action, Plaintiffs were "employees" of Defendant as defined by § 203(e)(1) of the FLSA, and worked for Transcend within the territory of the United States within three (3) years preceding the filing of this lawsuit, including times during which their claims against Transcend were equitably tolled.

8. At all times material to this action, Transcend has been an enterprise engaged in commerce or in the production of goods for commerce as defined by § 203(s)(1) of the FLSA, with annual revenue in excess of $500,000.

9. At all times material to this action, Transcend has been subject to the pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in interstate commerce.

10. Defendant does not dispute that Plaintiffs were non-exempt employees within the meaning of the FLSA.

11. Venue in this district is proper under 28 U.S.C. 1391(b) because Plaintiffs reside in this district, and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL BACKGROUND

### A.     Plaintiffs' Employment With Transcend.

12.     Plaintiffs' primary duties as employees of Defendant included utilizing their personal computers and voice-recognition technology to edit, transcribe, and type medical records for Defendant while working from home.  Plaintiffs were required by Defendant to ensure their transcribed and edited lines of the medical records met stringent rates of accuracy.

13.     Defendant instituted job conditions that were uniform among all Plaintiffs, including requirements that Plaintiffs perform their job duties by sitting at a computer station, downloading jobs via a high speed internet connection, listening to medical dictation via a headset, and returning completed medical reports to Defendant electronically via the internet.

14.     Plaintiffs were all primarily compensated at a rate per line of transcribed, typed and/or edited medical records.

15.     To ensure the accurate editing or transcribing of medical reports, Plaintiffs performed various duties for which they were not compensated through Defendant's per-line, production-based pay structure; however, these duties were essential to ensuring the accuracy of lines within medical records.

16. Duties essential to the accurate transcription and/or editing of medical records for which Plaintiffs were not compensated included, but were not limited to: retrieving the patient's medical record number and name to verify the correct individual's record was being consulted; ascertaining the accuracy of the patient's name, birth date, and date of visit to the physician for the record at issue; ensuring the dictator's name is entered correctly; ensuring all preliminary background information is entered correctly and, if the dictator does not provide the date of the report, creating and attaching a document communicating this omission to Defendant's Quality Assurance Department and/or the customer; ensuring the attending physician's name is entered and marked to receive a copy of the patient report; communicating with Transcend officials and Team Leaders via email and Yahoo Instant Messenger while editing or transcribing medical reports regarding any work-related issues; ensuring the accuracy of physician and patient personal information by using Google and other online sources to verify locations and addresses; ensuring the proper medical term is inserted into the medical record by consulting Google and online sources for spelling and definition information; and communicating with technical support regarding any problems or defects with the transcription/editing and voice-recognition software. All such duties were performed for the primary benefit of Defendant.

17. Defendant's compensation of Plaintiffs for only "hands on keyboard" time excluded compensable work time.

18. Performance of uncompensated duties essential to the accurate transcription and editing of lines within medical records caused Plaintiffs to work more hours than they were authorized to submit on their timesheets, resulting in compensation at rates less than the federal minimum wage.

**B. Defendant Failed to Pay Plaintiffs Minimum Wage During At Least One or More Workweeks.**

19. For at least one workweek, Defendant failed to compensate Plaintiffs at an hourly rate of pay at least equal to the federal minimum wage ($7.25 per hour).

20. Plaintiff Barbara Vaughn was not paid minimum wage for every week she was at Transcend. She worked at least 40 hours per week during her time at Transcend. Therefore, she was entitled to a weekly minimum wage of at least $290. However, she was often not paid minimum wage for all hours worked at Transcend. For example, from August 5, 2012 through August 11, 2012, she was only paid $192.97 for the entire week, well below the minimum wage considering all hours that she worked.

21. Plaintiff Amy L. Ford was not paid minimum wage for every week she was at Transcend. She worked approximately 40 hours per week during her time at Transcend. Therefore, she was entitled to a minimum weekly wage of

6

approximately $290.  However, she was often not paid minimum wage for all hours worked at Transcend.  For example, from January 29, 2012 through February 4, 2012, she was only paid $225.11 for the entire week, well below the minimum wage considering all hours that she worked.

22. Plaintiff Lisa Edwards was not paid minimum wage for every week she was at Transcend.  She worked approximately 25 hours per week during her time at Transcend.  Therefore, she was entitled to a minimum weekly wage of approximately $181.25.  However, she was often not paid minimum wage for all hours worked at Transcend.  For example, from October 7, 2012 through October 13, 2012, she was only paid $130.73 for the entire week, well below the minimum wage considering all hours that she worked.

23. Plaintiffs were compensated primarily per line edited or transcribed. Plaintiffs understood compensated work time to be limited to "hands on keyboard" time.

24. Defendant's Employee Handbook did not sufficiently indicate Defendant intended its piece rate compensation system to cover payment for non-productive tasks.

25. There was no clear and mutual understanding between Plaintiffs and Defendant that Defendant's piece rate compensation system was intended to compensate Plaintiffs for all hours worked.

26. To be considered a full-time MLS employed by Transcend, production of a total of $900 in lines transcribed or edited must be grossed per pay period.

27. To be considered a part-time MLS employed by Transcend, a total of $450 in lines transcribed or edited must be grossed per pay period.

28. Editing duties constituted the majority of compensated "hands on keyboard" time for Plaintiffs.

29. The full-time and part-time earnings standards were not always achievable because the lesser-paying editing duties constituted the majority of compensated "hands on keyboard" time for Plaintiffs.

30. Defendant knew that many MLSs, such as Plaintiffs, would not be able to reach production quotas as part-time and full-time employees.

31. Defendant treated Plaintiffs as employees paid on production, and that time worked was limited to production time.

32. Defendant's compensation of Plaintiffs for lines edited or transcribed (as opposed to compensable time worked) resulted in Plaintiffs having to "flex" their

time when there were no medical records to be edited or transcribed in Plaintiffs' electronic queue.

33. Time "flexing" was performed at the behest of Defendant and required Plaintiffs to be on call and log in and out of Transcend's transcription/editing software for extended periods of time. There were two types of time flexing to meet the minimum requirement for lines edited or transcribed during a given shift.

34. First, Defendant assigned Plaintiffs a schedule during which they were to transcribe medical reports. If Plaintiffs reported to their assigned shift and there were no medical reports available to transcribe, Plaintiffs were instructed to flex their time by constantly checking back until work became available. During this time, Plaintiffs were not free to perform other tasks while they waited for work to be sent from Defendant. In addition, Plaintiffs were not compensated for the time spent waiting for work.

35. Second, Plaintiffs also flexed their time outside of their regularly scheduled shift in order to meet their production quotas.

36. Flexing of work time was required to meet Defendant's uniform production quotas in the event no work was available for completion.

37. Defendant knew MLSs, including Plaintiffs, were short of work, and were constantly checking back during both scheduled and unscheduled work times

in order to meet their production requirements. In fact, Defendant would inform MLSs when a large amount of work actually became available in recognition of this work shortage.

38. If MLSs (like Plaintiffs) did not meet their line counts and/or work outside of their assigned schedules, they would be subject to adverse employment actions, including but not limited to demotion and termination.

39. Defendant knew Plaintiffs performed uncompensated work during scheduled shifts and outside of their scheduled shifts, but Defendant did not consider MLSs to work off-the-clock.

40. Defendant failed to compensate Plaintiffs at a rate commensurate with the federal minimum wage.

C. **Defendant Failed To Accurately Record All Compensable Work Time of Plaintiffs.**

41. Plaintiffs manually entered a single start and end time into an internet-based timekeeping system. From May 2009 until February 1, 2010, Defendant used TimeTrax or ADP eLabor for manual entry of work times.

42. Beginning on February 1, 2010, Defendant required Plaintiffs to use the internet-based timekeeping program TimeSaver for manual time entry. TimeSaver is a commercially-available web-hosted product provided by Automatic Data Processing (ADP).

43. Plaintiffs accessed TimeSaver through the internet, logged into the program using a username and password, and entered a single clock-in and clock-out time each day.

44. Defendant indicated to MLSs, including Plaintiffs, that they could work as many hours as they wanted, as long as they recorded no more than forty (40) hours per week.

45. Defendant informed Plaintiffs that they were to only record their actual production time in TimeSaver, Defendant's uniform timekeeping system. Plaintiff interpreted this to mean that only "hands on keyboard" time was to be recorded, and that time spent flexing or performing other work-related activities were not to be input in to Defendant's time keeping system.

46. Defendant knew that the time entries were not reflective of the actual time Plaintiffs spent performing work in a day.

47. Even if Plaintiffs worked outside their normally scheduled shift, Defendant instructed Plaintiffs to enter a single daily entry in TimeSaver.

48. The one singular time-in and time-out entry per day could not accurately state the time Plaintiffs were logged in and out of Defendant's software platform(s) during a day.

### D.   Defendant's Violations of the FLSA Were Willful Because Defendant Knew or Should Have Known Plaintiffs Performed Uncompensated Work.

49.   Defendant actively monitored Plaintiffs' production and work at all hours of the day through its electronic medical transcription software platforms, including the BeyondTXT transcription platform utilized by Plaintiffs.  MLSs transcribed and edited medical reports within the BeyondTXT program, which was installed on their computers.

50.   Medical transcription software platforms consist of a series of applications designed for moving dictation through a workflow process to produce medical reports.

51.   The records generated by the transcription/editing software platform(s), including the Beyond TXT platform, indicate the times Plaintiffs logged in and out, or remained logged in and on-call to check for work available in the form of medical reports available from download in the electronic queue.

52.   The records generated by the transcription/editing software platform(s), including but not limited to Beyond TXT, indicate that Plaintiffs frequently worked hours in excess of their assigned shifts.

53. The records generated by the transcription/editing software platform(s), including Beyond TXT, indicate that Plaintiffs expended time performing duties in addition to "hands on keyboard" time for which they were not compensated.

54. Defendant had access to the records generated by the transcription/editing software platform(s), including but not limited to Beyond TXT, and regularly consulted such records for the purposes of monitoring and evaluating the work performance of its employees.

55. Defendant implemented management tools for the purpose of monitoring and tracking non-scheduled work by MLSs.

56. BeyondTXT displayed real time information to Defendant's managers regarding when Plaintiffs were working.

57. Plaintiffs' supervisors, including Team Leaders and Regional Operations Managers, knew the specific times Plaintiffs were logged in and working on a downloaded medical report, including but not limited to: when Plaintiffs were online typing, when Plaintiffs downloaded a report, and when Plaintiffs submitted completed medical reports.

58. Defendant's management accessed a website called EIS (part of the BeyondTXT platform), which allowed management to monitor: (a) MLSs scheduled to work and online working, (b) MLSs scheduled but not online, and (c) MLSs

working while not scheduled. Defendant's management could also access an application called BeyondTXT Console. Data generated by BeyondTXT Console revealed when a particular report was delivered to Defendant for editing by a particular MLS, and when a report was returned by the MLS as completed with a recorded date time stamp.

59. BeyondTXT allowed Defendant's Team Leaders to know when Plaintiffs worked hours in excess of reported time.

60. Defendant tracked weekly data of Plaintiffs' actual hours worked, minutes of audio edited, edited lines per hour, estimated active time editing medical reports, and the pause percentage of each particular MLS.

61. Defendant tracked and generated reports of transcription and editing proficiency data for MLSs on a weekly basis. Defendant's platform data indicated the precise times during which Plaintiffs downloaded and submitted medical reports.

62. Plaintiffs and their supervisors had the ability to communicate with each other by email and phone. Plaintiffs exchanged emails and phone calls with supervisors during their scheduled and non-scheduled shifts, further showing Defendant knew Plaintiffs were working a greater amount of hours than they were allowed to report on their TimeSaver accounts.

63. Defendant's failure to compensate Plaintiffs for all compensable work duties forms a basis for establishing Defendant's willful violation of the FLSA's requirements to compensate employees at a minimum hourly wage. Likewise, Defendant's failure to maintain accurate records of the time worked by its employees, as required by the FLSA, is further evidence of Defendant's willful violation of the law.

64. Defendant knew or should have been aware of the performance of essential duties for which Plaintiffs were not compensated. Defendant's knowledge of such duties is based in part upon communications relating to essential job functions, the inaccuracy of Defendant's timekeeping system, and the software platform data indicating time worked by Plaintiffs to perform duties for Transcend from home.

65. Plaintiffs are properly joined pursuant to Federal Rule of Civil Procedure 20 because they assert a right to relief jointly with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.

66. Joinder is proper because Plaintiffs knew of the term "hands on keyboard" time and understood that hands on keyboard time meant they were only paid for when they were actually typing and transcribing within a downloaded medical report.

## COUNT I
## (FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT)

67. Plaintiffs incorporate by reference the above-stated paragraphs as if set forth fully herein.

68. Plaintiffs are entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 216(b). Plaintiffs were "employees" of Defendant as defined by § 203(e)(1) of the FLSA, and worked for Transcend within the territory of the United States within three (3) years preceding the filing of this lawsuit, plus times that their claims against Transcend have been equitably tolled.

69. At all times material to this action, Transcend is and/or has been the "employer" of Plaintiffs within the meaning of 29 U.S.C. § 203(d).

70. Defendant failed to pay Plaintiffs at an hourly rate no less than $7.25 per hour for each work week in violation of 29 U.S.C. § 206.

71. Defendant's compensation of Plaintiffs per line edited or transcribed, but not for time spent on the performance of duties essential to such functions, caused Plaintiffs to frequently not be compensated at least $7.25 per hour worked in each work week, in violation of 29 U.S.C. § 206.

72. Weekly payments received by Plaintiffs divided by the total time worked in work weeks fell below the federal minimum wage.

73. Defendant had knowledge that Plaintiffs were not being paid for all the time that they performed duties essential to the accurate completion of their duties as MLSs.

74. Defendant failed to keep accurate time records as required by the FLSA. 29 U.S.C. § 211(c).

75. Defendant knowingly and willingly violated the FLSA by failing to pay Plaintiffs at least $7.25 per hour worked.

76. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, Defendant unlawfully deprived Plaintiffs of adequate compensation for work performed. Defendant is liable under 29 U.S.C. § 216(b) for paying Plaintiffs at a rate less than the federal minimum wage, as well as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

77. Plaintiffs are entitled to an award of liquidated damages. Defendant will not be able to meet its high burden of proving that it acted in good faith and with objectively reasonable grounds for believing that its conduct was not in violation of the FLSA.

78. Defendant's violations of the FLSA as stated herein are willful violations resulting in a three year statute of limitations, meaning that Defendant knew or showed reckless disregard for whether its conduct violated the FLSA.

WHEREFORE, Plaintiffs demand judgment against Defendant and seek relief including, Plaintiffs' unpaid compensation; liquidated damages; finding that Defendant's conduct was a willful violation of the FLSA; Plaintiffs' attorneys' fees, litigation costs and court costs; pre-judgment and post-judgment interest; and for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs request trial by jury on all claims triable by jury herein.

Respectfully submitted on June 30, 2015.

| | |
|---|---|
| */s/ Kevin J. Dolley* | */s/ Regan Keebaugh* |
| Kevin J. Dolley | Regan Keebaugh |
| Missouri Bar No. 54132 | Georgia Bar No. 535500 |
| (*Pro Hac Vice* admission pending) | Radford & Keebaugh, LLC |
| LAW OFFICES OF KEVIN J. DOLLEY, LLC | 315 W. Ponce de Leon Ave., Suite 1080 |
| 2726 S. Brentwood Blvd. | Decatur, Georgia 30030 |
| St. Louis, MO 63144 | (678) 271-0300 - Telephone |
| (314)645-4100 - Telephone | (678) 271-0311 - Facsimile |
| (314)736-8216 - Facsimile | regan@decaturlegal.com |
| kevin@dolleylaw.com | |

*Attorneys for Plaintiffs*